Filed 8/28/14  In re Thomas B. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re THOMAS B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B256444 (Super. Ct. No. J068860) (Ventura County) |
| STEPHANIE P.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF VENTURA COUNTY,<br><br>    Respondent;<br>_____<br><br>VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>  Real Party in Interest. | |

Stephanie P. (Mother) is the biological mother of Thomas B., a dependent of the juvenile court since he tested positive for methamphetamine and methadone two days after his birth in June 2012.  Mother seeks extraordinary writ relief (Cal. Rules of Court, rules 8.452, 8.456) from the juvenile court's order terminating family reunification services and setting the matter for a permanency planning hearing.  (Welf. & Inst. Code,

1

§ 366.26.)[1]  She contends the order is not supported by substantial evidence.  We deny the writ.

*Facts*

Mother went to the emergency room at Los Robles Hospital in May 2012, because she thought she was in labor.  At that visit, she tested positive for methamphetamine.  Two days later, she gave birth to Thomas.  When questioned by a social worker and a public health nurse, Mother explained she took an Adderall on May 31, thinking it was heartburn medication.  The Adderall was left over from an old prescription to treat her attention deficit hyperactivity disorder (ADHD).  Mother believed Thomas tested positive for methadone because she took a Vicodin, also from an expired prescription, for back pain.  Mother could not produce the prescription pill bottle, the heartburn medication, or a copy of either prescription.  She also could not name the prescribing physicians.

The social worker reported, "[Mother] is unable to explain why her infant tested positive for amphetamine approximately six days after her reported use of the Adderall.  Please note that according to [the manufacturer] of Adderall, the elimination half-life for d-amphetamine is 10 hours in adults and the elimination half-life for 1-amphetamine is 13 hours in adults.  The elimination half-life in children ages 6-12 is lower than the adult range."

At the time of Thomas' birth, Mother had been living with Sean B. (Father) for about two years.[2]  He denied any drug use himself or any knowledge of Mother's drug use.  Thomas was discharged from the hospital to Father's custody.  Father agreed Mother would leave the home and would not have unsupervised contact with Thomas.  He was also advised that he could not supervise Mother's visits with the infant.

By the time of the jurisdiction and disposition hearing in mid-July, respondent's social worker suspected that Mother was again living in the home.  Both parents denied this, but the social worker noted that Mother had not arranged supervised

---

[1] All statutory references are to the Welfare & Institutions Code unless otherwise stated.
[2] Father is not a party to the Petition for Extraordinary Relief.

visits with the one-month old Thomas. In addition, the parents were very difficult to contact. They did not return voice mails and Father frequently did not answer the door when the social worker arrived unannounced. The juvenile court assumed jurisdiction over Thomas and ordered that he remain in Father's home on the condition that Mother have no unsupervised contact with him.

On July 25, the social worker watched Mother exit Father's house and leave in a white vehicle. Father left shortly thereafter, with Thomas and drove to the site of a previously arranged supervised visit with Mother. The social worker detained Thomas and explained what she had seen to the parents. Neither parent responded. Both parents were arrested for being under the influence of methamphetamine.

Respondent filed a supplemental petition, alleging Thomas was not safe in his Father's custody because Mother was both living in the family home and using methamphetamine. In addition, neither parent would communicate with respondent or engage in services. The juvenile court detained Thomas in foster care.

Between July 2012 and April 2013, Mother briefly attended numerous out-patient substance abuse programs in Ventura County. She also completed two separate 30-day in-patient programs. Although she actively participated in these programs and experienced some periods of sobriety, Mother consistently relapsed. In a March 2013 status review report, respondent noted that Mother missed two out of 14 drug tests and had negative test results on the remaining 12 tests. Mother was evasive about her living arrangements and about her reasons for switching among various out-patient programs.

By April 2013, respondent agreed to a 60-day home visit for Father and Thomas. Mother completed a 30-day inpatient rehabilitation program and respondent agreed she could stay in the home as well. Mother tested positive for methamphetamine the day before the home visit began. When the social worker learned of this result, she confirmed with Mother's physician that her ADHD medication could not cause a positive drug test. Mother nevertheless denied any drug use and claimed the positive result may have been from her prescribed medications, from over-the-counter medication or "from going through the pockets of her old clothing."

3

Respondent allowed the 60-day home visit to go forward on the condition that Mother move out. She agreed and said that she would be living with her sponsor while she waited to hear whether her insurance would approve another inpatient rehabilitation stay. Thomas began the 60-day visit on June 15, 2013. Three days later, Mother was dismissed from the inpatient program for being under the influence and failing to provide a urine sample for drug testing. Mother was evasive with the social worker about the reasons for her failed drug test. She missed two other mandatory tests and but finally provided a negative test result three days later.

The social worker then confirmed that Mother was no longer attending an in-patient rehabilitation program, was not living with her sponsor and was not participating in out-patient treatment. The social worker terminated the 60-day visit "due to the father allowing the mother to reside in the home and allowing her access [to] the child knowing that she has not been compliant in key components of her treatment plan."

In August 2013, respondent reported that Mother appeared to be making progress in an out-patient program and was attending classes at Ventura College. At the next status review hearing, in September 2013, the juvenile court accepted respondent's recommendation that family reunification services be continued for six months and that Thomas continue to reside in foster care. Four days later, Mother was discharged from the outpatient program "due to non-compliance with their substance abuse policies." Mother again blamed her September 30, 2013 positive drug test result on the ADHD medication. Her physician, however, informed the social worker that Mother stopped taking ADHD medication on September 9.

Respondent recommended that reunification services be terminated for both parents, based on Mother's history of relapse, her refusal to enter a more intensive inpatient rehabilitation program and Father's enabling behavior. In the interim between the September 26, 2103 order continuing services for six months, and the May 14, 2014 order terminating services, Mother missed two scheduled drug tests and then tested negative at an unapproved testing site.

4

The juvenile court followed respondent's recommendation, terminating reunification services for both parents after a contested review hearing that lasted four days. Its order is based on findings that Mother "has been in and out of several different treatment facilities" and refused to enter inpatient treatment. She had a history of relapsing and of attempting to manipulate the drug testing process. Mother had also been evasive or dishonest about both her sobriety and her living arrangements.

*Discussion*

Mother's petition for extraordinary writ relief contends the juvenile court's order is not supported by substantial evidence. First, Mother contends that respondent and the juvenile court failed to take into consideration the impact of her ADHD on her drug tests results and on her ability to succeed in a substance abuse treatment program. Mother further contends the juvenile court should not have relied on missed and diluted drug tests to find she did not comply with her case plan. The juvenile court was also wrong, Mother contends, when it found she had been dishonest or evasive about her living arrangements. Mother contends her history of moving from one treatment program to another also does not demonstrate she poses a risk of harm to Thomas.

Mother's writ petition does not comply with the procedural requirements of the California Rules of Court, rule 8.452. Specifically, rule 8.452 (b)(1) requires that the petition be supported by a memorandum that provides a "summary of the significant facts, limited to matters in the record." (Cal. Rules of Court, rule 8.452(b)(1).) Mother's writ petition contains no citations to the juvenile court record, summarizes only those facts which are supportive of her contentions and disregards all of the evidence supporting the findings of the juvenile court. As a consequence, the petition is subject to summary denial. (*Anthony D. v. Superior Court* (1998) 63 Cal.App.4th 149, 157.)

We are, however, required to liberally construe the petition and, "[a]bsent exceptional circumstances," to decide the petition on its merits. (Cal. Rules of Court, rule 8.452(a)(1), (h)(1).) Accordingly, we address Mother's substantial evidence claim on its merits. In doing so, we review the entire record in the light most favorable to the juvenile court's order and draw all reasonable inferences from the evidence in support of that

5

order.  We may not reweigh the evidence or exercise our independent judgment, but determine only whether there are sufficient facts in the record to support the findings of the juvenile court.  (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028; see also *James B. v. Superior Court* (1995) 35 Cal.App.4th 1014, 1021.)

The juvenile court's findings are supported by the record.  In particular, the record demonstrates that Mother is addicted to methamphetamine and, despite having received extensive treatment for that condition, has been unable to achieve or maintain sobriety.  Throughout the pendency of this matter, Mother has evaded and manipulated the drug testing process and, when she has tested positive, has blamed the result on her prescription ADHD medication.  Mother's physicians confirmed her positive drug test results could not have been caused by the medication.  In addition, Mother tested positive weeks after she stopped taking prescribed medications.  These facts provide substantial evidentiary support for the juvenile court's order.

*Conclusion*

The petition for extraordinary writ is denied.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.


6

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Steven J. Renshaw, for Petitioner

Andrew M. Wolf, for Minor and Real Party in Interest.

Leroy Smith, County Counsel, County of Ventura, Robert N. Kwomg and Linda Stevenson, Assistant County Counsels for Ventura County Human Services Agency, Real Party in Interest.